IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

**GOLDEN GLOW TANNING SALON, INC.**     **PLAINTIFF**

**v.**     **CAUSE NO. 1:20-CV-103-GHD-DAS**

**CITY OF COLUMBUS, MISSISSIPPI**     **DEFENDANT**

## OPINION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter arises from a Complaint by the Plaintiff in which it seeks to recover damages from alleged violations of the Fourth, Fifth, and Fourteen Amendments of the United States Constitution and for a violation of Section 17 of the Mississippi Constitution [1, at 1]. The Plaintiff is a Mississippi corporation that provides artificial tanning services [1, at ¶ 1]. The Defendant is a political subdivision of the State of Mississippi [1, at ¶ 2].

The Plaintiff's Complaint arises out of an Ordinance enacted by the Defendant [1, at 4-5]. The Ordinance mandated the temporary closure of the Plaintiff's business due to the COVID-19 pandemic [1-4, at 3]. The Ordinance went into effect at 5 p.m. on March 21, 2020 [*Id.*]; the Plaintiff was allowed to reopen its business on May 9, 2020 [1, at ¶ 16]. The Plaintiff alleges that the Ordinance in effect amounted to a taking of the Plaintiff's business for public use without just compensation [1, at ¶¶ 14, 17, 23]. It further alleges that the Ordinance violates the Equal Protection Clause of the Fourteenth Amendment [1, at ¶ 24] and is an unreasonable seizure in violation of the Fourth and Fourteenth Amendments of the U.S. Constitution. It likewise argues that the Defendant's actions violated the Plaintiff's procedural and substantive due process rights [1, at ¶¶ 27-28].

1

Presently before the Court is the Defendant's Motion for Summary Judgment [26]. The Plaintiff has filed its Response to the Defendant's Motion [31], and the Defendant has filed its Reply [33]. Thus, the matter is ready for review.

For the reasons stated herein, the Defendant's Motion for Summary Judgment [26] is GRANTED.

## I. **Factual Background**

The Court is well aware of the ongoing COVID-19 pandemic, and the facts of this historic and deadly disease have become both well-documented and widely known. Nevertheless, a few pertinent details bear repeating. As the Plaintiff notes, the World Health Organization declared the COVID-19 coronavirus outbreak as a pandemic on March 11, 2020 [1, at ¶ 4]. On March 16, 2020, the United States Department of Homeland Security issued a list of "essential occupations" that was designed to advise state and local governments creating responses to the pandemic [*Id.*]. On March 24, 2020, the Governor of Mississippi issued Executive Order No. 1463, which likewise categorized certain businesses and industries as essential, after reiterating that a state of emergency existed in Mississippi at that time due to COVID-19 [1-1]. On March 21, 2020, the Mayor and City Council of the City of Columbus, Mississippi, similarly issued a Resolution declaring a civil emergency and enacting a number of emergency measures designed to counter the spread of the disease [1-4]. Section 2 of this Resolution states as follows:

> Because of the likelihood of close person-to-person contact, which
> increases dramatically the likelihood of the spread of infectious disease,
> effective at 5:00 p.m. on March 21, 2020, and continuing until further
> action by the Mayor and Council of the City of Columbus, all bars,
> nightclubs, meetings of fraternal and civic organizations, child care
> facilities, bowling alleys, recreational facilities, skating rinks, tattoo parlors,
> gyms, barbershops, hair/beauty and nail and **tanning salons**, spas,
> convention centers, community centers, and parks shall be closed for

> business. This section also applies to municipally owned convention spaces, community centers and parks and persons who have rented municipally owned facilities shall be entitled to a full refund of any rental sums and deposits paid.

[1-4, at 3] (emphasis added).

An accompanying Ordinance established that a violation of the Resolution "shall be punished by a fine not exceeding $1,000 or imprisonment for a term not exceeding 90 days, and the cost of prosecution, or by both, such fine and imprisonment in the discretion of the municipal judge" [1-5, at 1]. Furthermore, "[e]ach day any violation of any provision of this Code or any ordinance shall continue shall constitute a separate offense" [*Id.*].

As the Plaintiff concedes, the Defendant allowed the Plaintiff to reopen its business on May 9, 2020 [1, at ¶ 16]. This equates to a mandatory closure of the Plaintiff's business for seven weeks.

## II.     Legal Standard

Summary judgment is warranted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). This rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. The party moving for summary judgment bears the burden of identifying its basis for the motion, and must point to specific parts of the record that support its contention of an absence of a genuine dispute of material fact. *Id.* at 323.

After the moving party does so, the burden shifts to the non-moving party, which must "go

beyond the pleadings and by … affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324; *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001); *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995). When there is a dispute about the facts, the Court must view the facts in the light most favorable to the non-moving party and likewise must draw reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 378 (2007). "However, a nonmovant may not overcome the summary judgment standard with conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *McClure v. Boles*, 490 F.App'x 666, 667 (5th Cir. 2012) (per curiam) (citing *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007)).

Any claim that is not raised in a response to a defendant's motion for summary judgment is deemed to be waived. *Aldrup v. Caldera*, 274 F.3d 282, 288 (5th Cir. 2001). Moreover, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) (citing *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas*, 136 F.3d at 458. That said, summary judgment "must be used cautiously or it may lead to drastic and lethal results." *Murrell v. Bennett*, 615 F.2d 306, 309 (5th Cir. 1980).

### III.  Analysis

As noted above, the Plaintiff presents several arguments and causes of action in its Complaint. Yet its central allegation is that the Defendant's Ordinance represents an unlawful taking and seizure in violation of the Fifth Amendment of the U.S. Constitution and the similar

4

clause in the Mississippi Constitution [1, at ¶¶ 18, 23]. Furthermore, the Plaintiff argues that the "right to earn a living" is a "fundamental 'property' and 'liberty right'" and because of this alleged fact, the Defendant's Ordinance violates the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution [1, at ¶ 24]. It likewise invokes alleged violations of its procedural and substantive due process rights [1, at ¶¶ 27-28]. However, in its Response to the Defendant's Motion for Summary Judgment, the Plaintiff only presents two arguments [32, at 6-18]. The first argument claims that the Defendant violated the Equal Protection Clause by mandating the closure of the Plaintiff's business due to COVID-19 while allowing churches, liquor stores, and large retailers to remain open [32, at 6-13]. Its second argument claims that the Defendant's Ordinance is an unlawful taking under the Fifth Amendment [32, at 13-18]. Since these are the only two arguments presented in the Plaintiff's Response, any other claim is deemed to be waived. *Aldrup*, 274 F.3d at 288 (5th Cir. 2001). Thus, the Court will only address these two arguments, which it takes in turn.

### A. The Defendant's Ordinance Does Not Violate the Equal Protection Clause

This Court has already addressed the substance of the Plaintiff's argument in a separate case, *Underwood v. City of Starkville, Mississippi.* 2021 WL 1894900. In that case, the Court held that "it would be impermissible judicial overreach and a violation of the separation of powers if the Court were to second-guess the modes used by the legislative and executive branches 'to protect the people at large' so long as they are not arbitrary or unreasonable." *Id.*, at *4 (quoting *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11, 27-28 (1905)). Furthermore, the Court noted that "[e]ven in instances of competing theories regarding public safety, it is the legislature's prerogative and responsibility to decide on the appropriate course of action" and that "the judiciary has no place in adjudicating or relitigating such decisions." *Id.*

The Court also rejected the contention that the "right to work" is a fundamental right, as the Plaintiff argues here. *Id.*, at *5. Thus, rational basis review is appropriate in this case as well, as it was in *Underwood*. *Id.* The Defendant has clearly met this burden in its Brief in Support of Its Motion for Summary Judgment, in which it articulated sound reasons for considering both the Plaintiff's place of business specifically and tanning salons in general to be places that would cause the spread of the COVID-19 coronavirus, under the circumstances at that time [27, at 5-6]. The Defendant also noted that other states restricted tanning salons as well [*Id.*, at 6-7].

The Plaintiff alleges that the Defendant unlawfully distinguishes between tanning salons on the one hand and liquor stores, retailers, and churches on the other hand. However, the Defendant has adequately stated rational reasons for restricting tanning salons, while excluding other entities cited by the Plaintiff [27, at 13-14; 33, at 6-7]. The businesses cited by the Plaintiff provide different services and are in different positions than that of the Plaintiff's business, and do not present the same health and safety concerns as that of the Plaintiff's tanning salon, while at the same time providing goods and services that have been deemed essential to public life in a way that "artificial tanning services" are not. They are not simply not similarly situated, as required by law for the Plaintiff's argument to be valid. *See Gallegos-Hernandez v. United States*, 688 F.3d 190, 195 (5th Cir. 2012). By that same token, churches are protected under the First Amendment's Exercise of Religion Clause, while the Plaintiff's tanning salon is not. The Court further notes that "while the City may have implemented other methods in order to achieve its goals, it is not the place of the Court to criticize the government's modes and methodologies for combating this deadly disease." *Underwood*, at *5. Thus, the Court finds that the Defendant has not violated the Plaintiff's Equal Protection rights.

6

## B. The Defendant Has Not Effectuated an Unlawful Taking

The Plaintiff argues that the Defendant's Ordinance constitutes an unlawful taking under the Fifth Amendment [32, at 13]. However, it conceded, and rightly so, that this Court held in *Underwood* that a Fifth Amendment claim did not apply under nearly identical facts as those presented in the case *sub judice* [*Id.*]. The Plaintiff thus asks that this Court reconsider *Underwood*, and discard the reasoning presented there [*Id.*]. The Court declines to do so. The Plaintiff argues that the Defendant's Ordinance is tantamount to a *per se* taking under Fifth Amendment jurisprudence because it "completely foreclosed Golden Glow Tanning Salon from earning income" [*Id.*, at 14]. However, a *per se* taking requires either "a permanent physical invasion []or a complete deprivation of all economic benefit of the property," *Underwood* at *7. Neither is present in this case, which therefore requires evaluation under the *Penn Central* factors, as was explained at length in *Underwood*. *Id*. The Court need not rehash *Underwood*'s legal analysis here, and instead cites to the substance of its findings.

Returning to the case *sub judice*, the Ordinance was a governmental regulation enacted in a time of necessity for a specific purpose. The Plaintiff has failed to convince this Court how the first two factors of the Penn Central analysis—"economic impact of the regulation on the claimant" and "the extent to which the regulation has interfered with distinct investment-backed expectations"—weigh its favor. *Penn Central Transportation Authority v. City of New York*, 438 U.S. 104, 124 (1978). As the Defendant correctly notes, the Plaintiff speculates about lost profits; there is no guarantee that the Plaintiff would have generated income during a pandemic at a time in which any interpersonal contact was considered to be risky. Nor does it articulate any kind of interference with distinct investment-backed expectations. In contrast, the Defendant correctly notes that the third Penn Central factor— "the character of the government action," i.e.

7

the Ordinance—supports its case [27, at 16]. The Ordinance can accurately be characterized as a temporary measure designed to promote the common good and safeguard the public from a deadly disease. Such government action is in line with prior actions found to be constitutional under the *Penn Central* factors. These factors dictate the same outcome in the case *sub judice* as in *Underwood*.

## IV. Conclusion

The Plaintiff correctly notes the practically identical nature of the facts in the case *sub judice* with those of *Underwood*. The Court sees of no reason to diverge from its holding in that case. Just as in *Underwood*, this case lacks the strength and substance to proceed on the merits of the Plaintiff's arguments. Moreover, as in *Underwood*, if the Court were to find in favor of the Plaintiff, "it would call into question every regulatory restriction as a possible constitutional violation, and jeopardize our entire system of administrative action." *Underwood*, at *9. The Court is once again unwilling to do so.

For the reasons stated above, the Defendant's Motion for Summary Judgment [26] is GRANTED.

An order in accordance with this opinion will issue on this day.

THIS, the 9 of November, 2021.

SENIOR U.S. DISTRICT JUDGE

8